

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 0 1 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Respondent-Plaintiff | § | |
| | § | |
| vs. | § | CA B-01-189 |
| | § | |
| JOSE ANTONIO SALDIVAR-GONZALEZ, | § | |
| Petitioner-Defendant | § | |
| ( CR B-99-417) | § | |

<u>GOVERNMENT'S ANSWER, MOTION FOR DISMISSAL UNDER 8(a) OF THE
RULES FOLL. 28 U.S.C. § 2255, OR IN THE ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT</u>

I.

The Court ordered the Government to respond to Petitioner's, Jose Antonio
Saldivar-Gonzalez (hereinafter referred to as Saldivar) 28 U.S.C. §2255 motion
filed on November 13, 2001, by March 6, 2002. The Government moves to
dismiss and, in the alternative, moves for summary judgment.

II.

On October 26, 1999, Saldivar was charged by indictment in the Southern
District of Texas, Brownsville Division, with illegal re-entry, in violation Title 8
U.S.C. §§1326(a) & (b). He plead guilty to the indictment on December 1, 1999,
before the Honorable Magistrate Judge Felix Recio, pursuant to a plea agreement
in which the government agreed to recommend that Saldivar receive acceptance
of responsibility and a sentence at the low end of the Guideline level he scores (R.
20, p. 6). The statutory maximum for the offense was twenty (20) years.

The probation department scored the instant offense at base offense level 8, with a sixteen-level Specific Offense increase by virtue of his prior aggravated felony convictions and recommended that he receive a three-level downward adjustment for timely acceptance of responsibility under U.S.S.G. §3E1.1(a, b) for a total offense level score of twenty-one (21). His criminal history placed him in criminal history category VI (PSR 42). The probation officer found that no factors existed to warrant a departure (PSR 78). Saldivar did not object to the PSR (R. 22 p. 3).

On March 1, 2000, at sentencing, the district court adopted the PSR as written, and sentenced Saldivar to the bottom of the Guideline level he scored, seventy-seven (77) months imprisonment, to be followed by a three-year term of Supervised Release for the instant offense. He was also ordered to pay $100.00 in mandatory costs. The judgment was entered March 8, 2000.

On March 23, 2000, Saldivar filed Notice of Appeal. Saldivar was represented by the same counsel on appeal. On December 14, 2000, Saldivar's appeal was denied (R. 23). *United States v. Saldivar-Gonzalez*, No. 00-40305 (5th Cir. 2000). On January 5, 2001, the Fifth Circuit issued the mandate. On May 8, 2001, Saldivar's petition for *writ of certiorari* with the Supreme Court was denied. On November 13, 200, Saldivar filed the instant motion.

III.

The pleading is timely.

2

IV.

The Government denies each and every allegation of fact made by Saldivar except those supported by the record and those specifically admitted herein, and demands strict proof thereof.

V.

## ALLEGATIONS

Saldivar filed an extremely cryptic motion. In his grounds for relief, he cites "ineffective assistance of counsel" followed by the following explanation, "[t]he failure of representing counsel to effectively object to the P.S.I. since movant clearly meets certain criteria for downward departure based on alien status". Under ground two, Saldivar cites a "constitutional violation": "[b]ased on new amendments to the UNITED STATES SENTENCING GUIDELINES a downward departure must be made, as stated in U.S.S.G. 1B1.10"[1].

The government interprets Saldivar's motion as alleging ineffective assistance of counsel by failure to move for downward departure due to the collateral consequences of his conviction by virtue of his alien status.

V.

## SALDIVAR'S BURDEN

Saldivar' first hurdle is that of "cause and prejudice". *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1982)(holding "plain error" incorrect standard for

---

[1] 'Reduction in Term of Imprisonment as a Result of Amended Guideline Range'.

3

§2255and requiring "cause and prejudice" standard).  Saldivar must first show cause that would excuse his failure to raise this claim on direct appeal and actual prejudice from the error that he now alleges.  The motion should be denied and dismissed under Rule 8(a) of the rules foll. 28 U.S.C. §2255 inasmuch as he offers insufficient cause and prejudice for obtaining review on collateral attack.  *See, e.g., United States v. Shaid*, 937 F.2d 228, 231–232 & n.7 (5th Cir. 1991) (en banc) (constitutional or jurisdictional issue reviewable for first time on collateral attack only if the movant demonstrates cause for his procedural default and actual resulting prejudice or that the uncorrected error would result in a complete miscarriage of justice).

An allegation of "miscarriage of justice" warrants collateral review where a constitutional violation has alleged to have caused the conviction of one innocent of the crime.  *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 1470 (1991); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643 (1986).  "The 'cause' standard requires [the movant] to show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 [5th Cir. 1992] which in turn quotes *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645). "Objective factors that constitute cause include: (1) interference by officials that makes compliance with the procedural rule impracticable; (2) a showing that the factual or legal basis for the claim was not

4

reasonably available to [the Petitioner] at the prior occasion; and (3) ineffective assistance of counsel in the constitutional sense." *Id.* Saldivar proffers no "cause" but does allege ineffective assistance of counsel. Saldivar argues that his attorney should have moved for a downward departure due to Saldivar's alien status.

"Ineffective assistance", if demonstrated, may satisfy the "cause" prong of his burden.

Saldivar inferentially alleges that he suffered "prejudice" as a result, in that his counsel's failure to move for downward departure based upon his prospective deportation resulted in a greater sentence than he would have received, and based upon the fact that the collateral consequences of his incarceration will result in longer incarceration than a U.S. citizen would receive.

To avoid the consequences of a dismissal by applying the fundamental-miscarriage-of-justice exception to Rule 9(b) foll. 28 U.S.C. §2255, a movant must demonstrate, as a factual matter, that he did not commit the crime of conviction. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 861, 867 (1995); *Ward v. Cain*, 53 F.3d 106, 107 (5th Cir. 1995) (citing *Schlup*). Stated differently, the movant must demonstrate that the failure to consider his claim will result in his continued incarceration though innocent. *See Saahir v. Collins*, 956 F.2d 115, 120 (5th Cir. 1992); *United States v. Espinoza*, 82 F.3d 640, 642 (5th Cir.1996) (citing *Saahir*). Saldivar does not allege he is innocent. He, therefore, fails the "prejudice" prong of his "cause and  prejudice" burden.

5

A.    INEFFECTIVE ASSISTANCE TO SATISFY THE "CAUSE" PRONG

1. Legal Principles Governing Ineffective Assistance.

Ineffective assistance of counsel claims are generally reviewed under the now well-established *Strickland* standard:    "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984); *Roe v. Flores-Ortega*, 528 U.S. 470, 471, 120 S.Ct. 1029, 1034 (2000).  To succeed on such a claim, a petitioner must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 1064.  The reasonableness of counsel's challenged conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and the reviewing court "must strongly presume that counsel has exercised reasonable professional conduct." *United States v. Samples,* 897 F.2d 193, 196 (5th Cir. 1990)(citations omitted).

In order to succeed on this claim, Saldivar must establish that trial counsel's actions, "fell below an objective standard or reasonableness" and that 'but for' such unprofessional errors the outcome would have been different. *United States v. Samples*, 897 F.2d at 196.  Saldivar fails in both regards.

To prevail on his claims, Saldivar must identify the acts or omissions that are outside the wide range of professionally competent assistance and then demonstrate that but for counsel's unprofessional errors the result of the

6

proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A reviewing court must endeavor to eliminate the distorting effects of hindsight and evaluate the facts from counsel's perspective at the time of trial. To this end, the court will indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable". *Id.* at 690.

The burden falls on the accused to prove a violation of constitutional standards. The focus is on the attorney's impact on the adversarial process; the constitutional standards may be met irrespective of an accused's evaluation. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984).

     a. <u>Sentencing errors</u>

In the context of sentencing errors, the petitioner must show that he was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 843–844 (1993); *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1997).

7

Even if Saldivar demonstrates that his counsel provided constitutionally infirm representation, Saldivar must also demonstrate prejudice. Although Saldivar need not demonstrate that, absent the error, his sentence would have been "significantly less harsh", he must demonstrate prejudice. "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance". *Glover v. U.S.* 531 U.S. 198, 203, 121 S.Ct. 696, 700 (2001).

B.    SALDIVAR'S INEFFECTIVE ASSISTANCE CLAIMS

Saldivar's "ineffective assistance" claim is  premised on an unsupported or incorrect premise.

1.    Eligibility for downward departure due to prospective deportation and collateral consequences of imprisonment.

Saldivar alleges "ineffective assistance" in his trial counsel failing to obtain a downward departure for being subject to deportation and for the collateral consequences of conviction particular to aliens. However, deportability is not a viable justification for a downward departure.   *United States v. Navarro*, 218 F.3d 895, 898 (8th Cir. 2000).

The issue of an alien's eligibility for a downward departure due to collateral consequences, was decided by the Fifth Circuit seven years prior to Saldivar's conviction in *United States v. Nnanna*, 7 F.3d 420 (5th Cir. 1993). The Fifth Circuit does not now, nor has it ever sanctioned such downward departures.  Although the

8

categorical prohibition against downward departures for "ineligibility for more lenient conditions of imprisonment, that an alien may incur" espoused in *Nnanna* has been tempered by the holding *Koon*, which mandates a case-specific analysis, Saldivar failed to demonstrate that his circumstances were "meaningfully atypical" to remove him from the heartland. *Id.* at 422; *United States v. Lopez-Salas,* 266 F.3d 842, 2001 (8th Cir. 2001)(the fact a deportable alien may be subject to some increases in the severity of the conditions of confinement alone is not sufficient to make his case atypical or unusual); *United States v. Maldonado,* 242 F.3d 1, 5 (1st Cir. 2001)(a deportable alien who commits a crime is still within the "heartland", departure must be based upon additional case-specific findings which made the case unusual); *Zeledon v. United States,* 2001 WL 770985 (N.D. Tex. 2001); *United States v. Navarro,* 218 F.3d at 897-898 (more secure conditions of confinement consequence of deportability which is a consequence of defendant's commission of crime under illegal immigration status); *United States v. Bautista,* 258 F.3d 602, 607 (7th Cir. 2001)(circumstances not extraordinary enough to justify downward departure); *United States v. Guzman,* 236 F.3d 830, 834 (7th Cir. 2001)(although departure may be appropriate under extraordinary circumstances, typical variance in conditions of confinement between deportable aliens and citizens "not great"),....: Although it is true that under *United States v. Koon,* 518 U.S. 81, 116 S.Ct. 2035 (1996), circuit courts may no longer categorically proscribe a basis for departure, the departure sought by Saldivar must fail as they do not

9

fall outside the "heartland".  As 18 U.S.C. §3624(c) prohibits the assignment of aliens to halfway houses, it is presumed that the United States Sentencing Commission considered the "statutory and regulatory structures upon which an informed sentencing treatment of immigration offenses significantly depended." *United States v. Clase-Espinal*, 115 F.3d 1054, 1057 (1st Cir. 1997); *United States v. Angel-Martinez*, 988 F.Supp. 475, 484 (D.N.J. 1997).  A §2255 motion cannot substitute for his failure at sentencing to seek a downward departure.  *United States v. Payne,* 99 F.3d 1273, 1281-1282 (5th Cir. 1996); *Garcia v. United States*, 1998 WL 37515 (S.D.N.Y. 1998).

Furthermore, even a casual review of Saldivar's prior record reveals that if any departure were appropriate, it would be an upward departure based upon his absolutely atrocious criminal record (PSR 20-44).

As the premises upon which Saldivar's instant complaint is based has no legal support, Saldivar's counsel's performance can not be shown to be deficient under *Strickland.*  As Saldivar has failed to demonstrate he was eligible for the alleged departures, he can show neither "cause" nor "prejudice" by his attorney's "failure" to take such action.  Further, Saldivar does not allege he is innocent.  He therefore fails the 'miscarriage of justice' test.

VI.

## SUBSTANTIVE CLAIMS

A.  <u>Collateral consequences of imprisonment of illegal aliens represents a violation of the Equal Protection clause.</u>

10

Saldivar inferentially argues that, as illegal aliens are ineligible for various beneficial prison programs, such as halfway house assignment, educational programs, etc., therefore, this disparate treatment represents a "constitutional violation" (i.e. violation of the Equal Protection clause).  Such claim relates to the manner in which Saldivar's sentence is served and is not cognizable under 28 U.S.C. §2255.  *United States v. Acevedo*, 7 Fed.Appx. 850,  — F.3d —, 2001 WL 280485 (10th Cir. 2001).

It is irrelevant that United States citizens are otherwise eligible for these programs, unless the statutory scheme is considered to create a classification based on alienage.  See, e.g., *Graham v. Richardson*, 403 U.S. 365, 370-372, 91 S.Ct. 1848 (1971)("Aliens as a class are a prime example of a 'discrete and insular minority [see *United States v. Carolene Products Co.*, 304 U.S. 144, 152-153, n. 4, 58 S.Ct. 778 (1938)] for whom such heightened judicial solicitude is appropriate;  "thus  restricting  welfare  benefits  on  basis  of  alienage unconstitutional).  However, there is a distinction between statutes which classify based on alienage and statutes which classify based on criminal actions.  Given Congress' plenary power over immigration, imposing different rules on immigrants versus citizens does not in itself create a suspect classification. *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473 (1977) (power to expel aliens is a fundamental sovereign attribute exercised by political departments of government and largely immune from judicial control); see also *Plyer v. Doe*. 457 U.S. 202, 223-225, 102

11

S.Ct. 2382 (1982)("undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'... it is 'a routine and normally legitimate part' of the business of the Federal Government to classify on the basis of alien status ... and to 'take into account the character of the relationship between the alien and this country ." '). Collateral consequences of imprisonment, distinguishing between aliens and citizens, is a rational application of this policy. *United States v. Adelke*, 968 F.2d 1159, 1160–1161 (11th Cir. 1992). Accordingly, there is no basis for Saldivar's Equal Protection argument.

VII.

CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Government respectfully prays that Saldivar's §2255 petition be dismissed, or in the alternative, subject to denial by summary judgment.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

Mark M. Dowd
Assistant U.S. Attorney
600 E. Harrison, # 201
Brownsville, Texas 78520
Texas Bar No. 06070500
Federal I.D. No. 9314
(956) 548-2554/Fax (956) 548-2549

12

## CERTIFICATE OF SERVICE

I, Mark M. Dowd, Assistant United States Attorney, certify that a true and correct copy of the  Government's Answer, Motion for Dismissal Under 8(a) of the Rules Foll. 28 U.S.C. §2255, or in the Alternative, Motion for Summary Judgment was mailed via Certified Mail, Return-Receipt Requested to Jose AntonioSaldivar-Gonzalez, No. 68132-079, Big Springs Correctional Center, Interstate Unit, 1801 W. I-20, Big Springs, Texas, 79720 on this the ____ day of March, 2002.

MARK M. DOWD
Assistant U.S. Attorney

United States District Court
Southern District of Texas
FILED

APR 2 8 2000

Michael N. Milby, Clerk of Court

1      IN THE UNITED STATES DISTRICT COURT

2      FOR THE SOUTHERN DISTRICT OF TEXAS

3             BROWNSVILLE DIVISION

4

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CASE NO. CR B-99-417 |
| | § | |
| VERSUS | § | BROWNSVILLE, TEXAS |
| | § | NOVEMBER 19, 1999 |
| JOSE SALDIVAR-GONZALEZ | § | 3:25 P.M. TO 3:27 P.M. |

5

6

7

8                  MOTION HEARING

9

BEFORE THE HON. JOHN WILLIAM BLACK, UNITED STATES MAGISTRATE JUDGE

10

11  APPEARANCES:

12

For the Plaintiff:        U.S. Attorney's Office
13                         MICHAEL RODRIGUEZ, AUSA
                          P.O. Box 1671
14                         Brownsville, Texas 78523

15  For the Defendant:      Federal Public Defender's Office
                          ED STAPLETON, AFPD
16                         P.O. Box 2163
                          Brownsville, Texas 78523

17
Court Interpreter:        No information provided
18
Court Recorder:           Gabriel Mendieta
19

20                         PREPARED BY:

21                         JUDICIAL TRANSCRIBERS OF TEXAS, INC.
                          7135 West Tidwell
22                         Building M, Suite 112A
                          Houston, Texas 77092
23                         (713) 462-6434
                          (713) 462-3042 (fax)

24
Proceedings recorded by electronic sound recording, transcript
25  produced by transcription service.

21

1.

1    (Official Court Interpreter present)

2        THE COURT:  B-99-417, *United States against Jose*

3    *Antonio Saldivar-Gonzales.*

4        MR. RODRIGUEZ:  Michael Rodriguez on behalf of the

5    United States, Your Honor.

6        MR. STAPLETON:  Ed Stapleton for Mr. Saldivar-

7    Gonzalez, Your Honor.

8            Judge, this is on motions.  We have previously

9    filed discovery motions that have been complied with.  The

10   remaining motion, we wish to withdraw and ask for rearraignment,

11   if possible, the week of the 29th.

12       THE COURT:  Okay, wait a minute.  Let me -- let me

13   make sure I'm following you.  You've got your discovery is what

14   you're saying.

15       MR. STAPLETON:  Discovery has been complied with,

16   Judge, and we'd ask that that motion be granted.

17       THE COURT:  Okay.  That's -- All right.  And that's

18   for the inspection of evidence?

19       MR. STAPLETON:  Yes, Your Honor.

20       THE COURT:  Okay.  Then the one to dismiss, you're

21   withdrawing.

22       MR. STAPLETON:  We withdraw that, Judge.

23       THE COURT:  Okay.  And he wants to be rearraigned?

24       MR. STAPLETON:  Yes, Your Honor.  But I want an

25   opportunity to spend some time with him first, Judge, on the

2.

1    plea agreement.  So I'd ask that we do it the week of the 29th.

2    I'm going to be gone next week a lot.

3              THE COURT:  Okay.  Is that all right?

4              MR. RODRIGUEZ:  No objection.

5              THE COURT:  Okay.  All right.

6         (These proceedings concluded at 3:37 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
Fax (713) 462-3042  •  Office (713) 462-6434

# CERTIFICATION

1
2
3
4
5
6      I certify that the foregoing is a correct
7
8      transcript from the electronic sound
9
10     recording of the proceedings in
11
12     the previous-entitled matter.
13
14
15
16
17
18     _____
       Signature of Transcriber
19
20     _____
       Signature of Proofreader
21
22     _____
       Date
23
24     _____
       JTT#
25

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
Fax (713) 462-3042   •   Office (713) 462-6434

United States District Court
Southern District of Texas
FILED

APR 2 8 2000

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

UNITED STATES OF AMERICA        §   CASE NO. CR B-99-417
                                §
VERSUS                          §   BROWNSVILLE, TEXAS
                                §   DECEMBER 1, 1999
JOSE ANTONIO SALDIVAR-GONZALEZ  §   10:30 A.M. TO 11:41 A.M.

REARRAIGNMENT

BEFORE THE HON. FELIX RECIO, UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:            U.S. Attorney's Office
                              MICHAEL RODRIGUEZ, AUSA
                              P.O. Box 1671
                              Brownsville, Texas 78523

For the Defendant:            Federal Public Defender's Office
                              ED STAPLETON, AFPD
                              P.O. Box 2163
                              Brownsville, Texas 78523

Court Interpreter:            (No information provided)

Court Recorder:               Gabriel Mendieta

                              PREPARED BY:

                              JUDICIAL TRANSCRIBERS OF TEXAS, INC.
                              7135 West Tidwell
                              Building M, Suite 112A
                              Houston, Texas 77092
                              (713) 462-6434
                              (713) 462-3042 (fax)

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1    (Official Court Interpreter present)

2         THE COURT:  Good morning.  Please be seated.

3             Mr. Rodriguez.

4         MR. RODRIGUEZ:  Good morning, Your Honor.

5         THE COURT:  Good morning.  All right, Mr. Stapleton is

6    not here, Mr. Rodriguez, and I think I'll take the other cases

7    first.  Probably take me about -- maybe, 30 minutes, if you'd

8    like to take a break or whatever.

9         MR. RODRIGUEZ:  Okay.  Thank you, Your Honor.

10         THE COURT:  Okay?  I think Mr. Stapleton is in another

11    courtroom right now.

12         MR. RODRIGUEZ:  Yes, sir, he's up with Judge Tagle in

13    a sentencing right now.

14    **(The Court attends to other matters unrelated to this case**

15    **until 11 a.m.)**

16         THE COURT:  All right, Mr. Stapleton is not back yet?

17         MS. SPEAKER:  No, sir.

18         THE COURT:  All right.  We'll be in recess until Mr.

19    Stapleton returns.

20         **(Recess from 11 a.m. to 11:21 a.m.)**

21                    **AFTER RECESS**

22         THE COURT:  Are we ready to proceed with this -- Is

23    this a felony plea, Mr. Stapleton?

24         MR. STAPLETON:  Yes, Your Honor.

25         MR. RODRIGUEZ:  Michael Rodriguez on behalf of the

1    United States, Your Honor.

2           THE COURT:  All right.  For the record, let's call

3    Cause No. B-99-417, *United States of America versus Jose Antonio*

4    *Saldivar-Gonzalez.*  Please come forward.

5           MR. STAPLETON:  Ed Stapleton for Mr. Saldivar-

6    Gonzalez.

7           MR. RODRIGUEZ:  Same announcement from the Government.

8           THE COURT:  All right.  Would you swear the defendant

9    in, please?

10          **(The Defendant is sworn)**

11          THE COURT:  Can you hear well enough with that

12   contraption on your head there?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  Mr. Saldivar, I need to

15   explain to you that you just took an oath to tell the truth.

16   And by doing that, you have subjected yourself to the laws

17   perjury, which means that if you answer my questions falsely, if

18   you lie to the Court and we find out about it, you could be

19   charged with perjury and prosecuted for that.  And if you're

20   found guilty of that charge, you could face a five-year term of

21   imprisonment, a 250,000 dollar fine, or both.  And you could be

22   placed on a term of supervised release for a period of three

23   years.

24          I will explain to you that a term of supervised

25   release is a period of time after serving your sentence, when

1  you would be released under some special conditions.  And if you

2  violated those conditions during that period of time, you could

3  be placed in jail for the three years, plus any new sentence

4  that you might get if you -- having a -- a charge a filed

5  against you.  And additionally, you could be facing a 100 dollar

6  special assessment.

7          Do you understand everything I've told you about

8  the law of perjury?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Okay.  How old a person are you, sir?

11         THE DEFENDANT:  Thirty-seven years old.

12         THE COURT:  Do you read and write?

13         THE DEFENDANT:  Just in Spanish.

14         THE COURT:  How far did you go to school?

15         THE DEFENDANT:  To sixth.

16         THE COURT:  In Mexico?

17         THE DEFENDANT:  Mexico.

18         THE COURT:  Have you ever been in a mental institution

19  or treated for a mental illness of any kind?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  Are you now taking any drugs or medication

22  that could affect your ability to understand these proceedings?

23         THE DEFENDANT:  No, sir.

24         THE COURT:  Mr. Stapleton, are you satisfied that Mr.

25  Saldivar is competent and able to assist you in his defense?

4.

1          **MR. STAPLETON:**  Yes, Your Honor.

2          **THE COURT:**  All right.

3          And Mr. Saldivar, I need to explain to you that

4    you have the right to have your case heard and your plea taken

5    before a United States district court, or a district judge.  You

6    can give up that right, and I understand that that is what you

7    wish to do.  I have in my hand here, a consent to the

8    administration of a guilty plea by a United States magistrate

9    judge.  It bears your name and your signature.  Is that your

10   signature on this document?

11         **THE DEFENDANT:**  Yes, sir.

12         **THE COURT:**  Before you signed this consent, did you

13   discuss it with your attorney Mr. Stapleton?

14         **THE DEFENDANT:**  Yes, sir.

15         **THE COURT:**  And did he explain it to you?

16         **THE DEFENDANT:**  Yes, sir.

17         **THE COURT:**  All right.  And do you wish me to accept

18   this and to take your plea here this morning?

19         **THE DEFENDANT:**  Yes, sir.

20         **THE COURT:**  Very well, I will accept it.

21         I need to also advise you that I am not the judge

22   who is going to -- if we take your plea, I won't be the one that

23   will find you guilty.  And I will not be the judge that will

24   sentence you.  You will go before Judge Tagle for that.  But I

25   will make a report and a recommendation to Judge Tagle.  And

1    based on that, she could find you guilty and sentence you.  Do

2    you understand that?

            THE DEFENDANT:  Yes, sir.

            THE COURT:  All right.  Have you received a copy of

5    the indictment in your case?

            THE DEFENDANT:  No.

            THE COURT:  Have you received a copy of the charges

8    that have been filed against you?

            THE DEFENDANT:  Oh, yes.  Yes, sir.

            THE COURT:  Have you discussed these charges fully

11   with your attorney?

            THE DEFENDANT:  Yes, sir.

            THE COURT:  Has your attorney answered your questions

14   and given you advice about your case?

            THE DEFENDANT:  Yes, sir.

            THE COURT:  And are you fully satisfied with the

17   counsel, the representation, and the advice given to you by your

18   attorney Mr. Stapleton?

            THE DEFENDANT:  Yes, sir.

            THE COURT:  All right.  Is there a plea agreement in

21   this case?

            MR. RODRIGUEZ:  There is, Your Honor.  In exchange for

23   the defendant's plea of guilt, the Government agrees to

24   recommend that he be given credit -- full credit for acceptance

25   of responsibility, and that he be sentenced at the bottom of the

6.

1    guideline level to which he scores.

2              THE COURT:  And there's only one count?

3              MR. RODRIGUEZ:  That's correct, Your Honor.

4              THE COURT:  All right.  The Government has just told

5    me, in the presence of yourself and your attorney, that they

6    have entered into an agreement with you and with your attorney

7    to the effect that if you plead guilty to the charges contained

8    in this indictment, that they will recommend to the Court that

9    you get full credit for acceptance of responsibility under the

10   sentencing guidelines, and they are going to recommend at the

11   time of sentencing that you be sentenced at the low end of the

12   sentencing guidelines, whatever level that may be.  Is that the

13   way you understand the agreement?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  This agreement is in writing and it has

16   your signature on it.  Is that your signature on this agreement?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  And on the back over here, it also has

19   your signature.  Is that your signature?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And in this section where it says that you

22   -- talked about the sentencing guidelines, is that your

23   signature as well?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  All right.  Did your attorney go over this

1    agreement with you in its entirety?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  And did he answer your questions and give

4    you advice about signing this document?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  And it is your wish that the Court accept

7    this plea agreement; is that correct?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  All right.  Has anyone promised you

10   anything that has not been mentioned here this morning by the

11   prosecutor or that is not contained in this document?

12           THE DEFENDANT:  No, sir.

13           THE COURT:  All right.  Has anyone forced you or

14   threatened you in any way to get you to sign this agreement and

15   to enter a plea here this morning?

16           THE DEFENDANT:  No, sir.

17           THE COURT:  I want you to understand that the terms of

18   this agreement are merely recommendations to the Court.  The

19   Court can reject those recommendations without permitting you to

20   withdraw your guilty plea and impose a sentence that could be

21   more severe than you may anticipate.  Do you understand that?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Knowing that, do you still wish for me to

24   accept this plea agreement?

25           THE DEFENDANT:  Yes, Your Honor.

8.

1    THE COURT:  All right.  Tell me in your own words, Mr.
2  Saldivar, what it is you understand you're being charged with in
3  this indictment.
4    THE DEFENDANT:  Of having entering again illegally
5  into the United States.
6    THE COURT:  Well, that's true.  But did you notice
7  that it also says here that you had previously been deported?
8    THE DEFENDANT:  Yes, sir.
9    THE COURT:  And that you did not obtain the consent of
10  the attorney general for reapplication to be admitted into this
11  country.  Did you notice that it also said that?
12    THE DEFENDANT:  Yes, sir.
13    THE COURT:  So, in other words, it says that you were
14  deported; that you came back illegally, and that you didn't have
15  permission of the attorney general to come back.  Do you
16  understand that that's what you're being charged with?
17    THE DEFENDANT:  Yes, sir.
18    THE COURT:  Is that the way you understand the
19  indictment?
20    THE DEFENDANT:  Yes, sir.
21    THE COURT:  And you discussed that indictment and
22  those charges with your attorney Mr. Stapleton?
23    THE DEFENDANT:  Yes, sir.
24    THE COURT:  All right.  Do you understand that this is
25  a felony offense, and if your plea is accepted and if you are

1    adjudged guilty of this offense, you could be sentenced to a

2    jail term of up to 20 years?  You could receive a fine of up to

3    $250,000, or both.  That is, you could be sentenced up to 20

4    years and additionally fined up to $250,000.  And there would be

5    at least a three-year term of supervised release which you would

6    receive and also a 100 dollar special assessment.

7              Do you understand the range of punishment for

8    this offense?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  All right.

11             Mr. Stapleton, are you satisfied that Mr.

12    Saldivar understands the charges and the nature of the charges

13    against him and the possible consequences?

14             MR. STAPLETON:  Yes, Your Honor.

15             THE COURT:  All right.

16             Now, earlier I asked you about the sentencing

17    guidelines, and I want to ask you some questions about that now.

18    Do you understand that the Court will not be able to determine

19    what your guideline sentence is until after a presentence report

20    has been completed and you and the Government have had an

21    opportunity to challenge the reported facts and the application

22    of the guidelines recommended by the probation officer?  Do you

23    understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Do you further understand that the

1  sentence imposed may be different from any estimate that your

2  attorney may have given you?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you further understand that after your

5  guideline range has been determined, that the court has the

6  authority in some circumstances to depart from the guidelines

7  and it could impose a sentence that could be more severe or

8  perhaps even less severe than what is called for by the

9  guidelines?  Do you understand that?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Do you further understand that parole has

12  been abolished, and that if you are sentenced to prison, that

13  you will not be released on parole; you will have to serve your

14  time?  Do you understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Do you further understand that under some

17  circumstances, you have the right to appeal your case, but by

18  entering into this plea agreement and by pleading guilty here,

19  you are giving up your right to appeal the case, except that

20  under some limited circumstances you may still have that right?

21  Do you understand that?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Do you understand that under the

24  Constitution and laws of the United States, that you are

25  entitled to a trial by a jury on the charges contained in this

1  indictment?  Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Do you understand that at that trial you

4  would be presumed to be innocent and the Government would be

5  required to prove you guilty by competent evidence and beyond a

6  reasonable doubt before you could be found guilty, and you would

7  not have to prove that you are innocent?  Do you understand

8  that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Do you further understand that in the

11  course of the trial that the witnesses for the Government would

12  have to come to court and testify in your presence, and your

13  attorney could cross examine those witnesses; he could object to

14  the evidence offered by the Government, and he could offer

15  evidence on your own behalf?  Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  You also have the right at that trial to

18  testify in your own defense if you choose to do so.  But you

19  also have the right not to testify.  And no inference or

20  suggestion of guilt can be drawn from the fact that you did not

21  testify.  Do you understand that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Do you further understand that if the

24  Court accepts your plea, you will waive, or give up your right

25  to a trial and the other rights that I've just discussed with

1   you?  There will be no trial, and the Court will enter a

2   judgment of guilty and sentence you on the basis of your guilty

3   plea after considering a presentence report.  Do you understand

4   that?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Do you further understand that you have

7   the right to remain silent?  You don't have to say anything

8   unless you want to.  But by pleading guilty, you waive and give

9   up your right to remain silent, because I have to ask you

10  questions about what you did in order to satisfy myself that you

11  are guilty as charged, and you will have to acknowledge your

12  guilt.  Do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Do you understand that you have the right

15  to the issuance of subpoenas to compel witnesses to come testify

16  in your defense?  Do you understand that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  All right.  Do you understand that if you

19  plead guilty, you'll give up all of the rights that I've just

20  explained to you?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  All right.  Having discussed with you what

23  you're charged with, the possible consequences, and the terms of

24  the plea agreement and what your rights are, do you still wish

25  to plead guilty?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.

3               Would you please arraign the defendant, Mr.

4     Rodriguez?

5          MR. RODRIGUEZ:  Yes, Your Honor.

6               *The United States of America versus Jose Antonio*

7     *Saldivar-Gonzalez*, Criminal No. B-99-417.  Indictment:  The

8     Grand Jury charges on or about October 6th, 1999, in the

9     Southern District of Texas and within the jurisdiction of the

10    Court, the defendant Jose Antonio Saldivar-Gonzalez, an alien

11    who had previously been denied admission, excluded, deported,

12    and removed, knowingly and unlawfully was present in the United

13    States, having been found in Cameron County, Texas.  The said

14    defendant having not obtained the consent of the Attorney

15    General of the United States for reapplication by the defendant

16    for admission into the United States, in violation of Title 8,

17    United States Code, Section 1326(a) and 1326(b).  True bill

18    signed by the foreman of the Grand Jury.

19               Mr. Saldivar-Gonzales, did you understand the

20    charge that was read to you?

21          THE DEFENDANT:  Yes, sir.

22          MR. RODRIGUEZ:  How do you plead, sir, guilty or not

23    guilty?

24          THE DEFENDANT:  Guilty.

25          THE COURT:  Are you pleading guilty because you are

1  guilty?

2      THE DEFENDANT:  Yes, sir.

3      THE COURT:  Tell me in your own words what it is you

4  did, sir.

5      THE DEFENDANT:  I entered illegally into the United

6  States, having been deported.

7      THE COURT:  What are the factual bases here, Mr.

8  Rodriguez?

9      MR. RODRIGUEZ:  Your Honor, if required to do so, the

10  Government would come to court and prove that on or about

11  October the 6th, 1999, the defendant was found, while in the

12  Harlingen City Jail, after having been arrested for public

13  intoxication.

14      Additionally, the Government would prove that

15  defendant had last entered the United States on May the 20th,

16  1999, by wading across the Rio Grande and thereby not presenting

17  himself for inspection by immigration officials.  A records

18  check revealed that the defendant had previously been deported

19  numerous times and that he is a aggravated felon.

20      Additionally, would prove that the defendant had

21  not applied with the attorney general for permission to reenter.

22      THE COURT:  You heard what the Government has just

23  said about you.  Is all that true, Mr. Saldivar?

24      THE DEFENDANT:  Yes, sir.

25      THE COURT:  When you entered this country, did you

1    enter on May the 20th of 1999?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  And how did you enter the country?

4           THE DEFENDANT:  Through the river.

5           THE COURT:  Were you inspected by an immigration

6    officer?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Were you inspected by an immigration

9    officer when you entered this country?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  You walked across the river from Mexico

12   into the United States then?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  All right.  And is it true that you had

15   previously been deported?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And did you have permission from the

18   attorney general of the United States for reapplication to be

19   admitted into this country when you came in?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  All right.  You admit all of that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Mr. Stapleton, are you satisfied those are

24   the facts in this case?

25          MR. STAPLETON:  Yes, Judge.

16.

1          THE COURT:  All right.  It is the finding of this

2     Court in Cause No. B-99-417, *United States of America versus*

3     *Jose Antonio Saldivar-Gonzalez*, that Mr. Saldivar is fully

4     competent and capable of entering an informed plea; that Mr.

5     Saldivar is aware of the nature of the charges and the

6     consequences of the plea, and that the plea of guilty is a

7     knowing and voluntary plea supported by an independent basis in

8     fact containing each of the essential elements of the offense.

9               I will recommend to Judge Tagle that you be found

10    guilty and sentenced accordingly.

11               Mr. Rodriguez, Mr. Stapleton, have I complied

12    with the Rule 11 requirements for taking a plea?

13          MR. RODRIGUEZ:  The Government feels you have, Your

14    Honor.

15          MR. STAPLETON:  Yes, Judge.

16          THE COURT:  Either one of you want me to ask any

17    questions of the defendant?

18          MR. RODRIGUEZ:  Nothing from the Government, Your

19    Honor.

20          THE COURT:  All right.  I'm going to order the

21    preparation of a presentence report to be completed by the 21st

22    day of January of the year 2000.  Thereafter, a report will be

23    given to Mr. Stapleton and to Mr. Saldivar.  Objections will be

24    filed by the 22nd day of February -- excuse me -- by the 4th day

25    of February of the year 2000.  A final report will be prepared

1    for the Court by the 22nd day of February of the year 2000.   And

2    this case is set for sentencing on the 1st day of March of the

3    year 2000 at nine o'clock in the morning before Judge Tagle on

4    the third floor.

5            I'll hand you and your client and the Government

6    a copy of this order.

7        **(Pause)**

8            **THE COURT:**  All right.  Anything further for the

9    Court?

10           **MR. STAPLETON:**  No, Your Honor.

11           **MR. RODRIGUEZ:**  Nothing from the Government, Your

12   Honor.

13           **THE COURT:**  We'll be in recess.

14       **(These proceedings concluded at 11:41 a.m.)**

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T I O N

I certify that the foregoing is a correct

transcript from the electronic sound

recording of the proceedings in

the previous-entitled matter.

_Jean Thomas_
Signature of Transcriber

_Lisa Bowman_
Signature of Proofreader

_April 24, 2000_
Date

_18578_
JTT#

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
Fax (713) 462-3042  •  Office (713) 462-6434

# ORIGINAL

1       IN THE UNITED STATES DISTRICT COURT

              SOUTHERN DISTRICT OF TEXAS

2               BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 3 2000

Michael N. Milby
Clerk of Court

3  _____

                          )

4  UNITED STATES OF AMERICA     )

                          )   CRIMINAL ACTION NO.

5  VS.                   )   B-99-417

                          )

6  JOSE ANTONIO SALDIVAR-GONZALEZ  )

  _____)

7

8

9                 SENTENCING PROCEEDINGS

         BEFORE THE HONORABLE HILDA G. TAGLE

10               MARCH 1, 2000

11  APPEARANCES:

12  For the Government:       MR. MARK DOWD

                       Assistant United States Attorney

13                     Brownsville, Texas

14  For the Defendant:       MR. ED STAPLETON

                       Assistant Federal Public Defender

15                     Brownsville, Texas

16  Transcribed by:          BRECK C. RECORD

                       Official Court Reporter

17                     600 E. Harrison Street, Box 16

                       Brownsville, Texas  78520

18                     (956)548-2510

19

20

21

22

23

24

25

      Captured and Transcribed by Computer - Eclipse

1          THE COURT:  All right.  99-CR-417-01, the United States

2   of America versus Jose Saldivar-Gonzalez.  What says the

3   Government?

4          AUSA DOWD:  Mark Dowd for the Government, present and

5   ready.

6          THE COURT:  What says the Defendant?

7          MR. STAPLETON:  Ed Stapleton for the Defendant.  We're

8   ready, Your Honor.

9      (At this time other cases were heard at which time the

10         following occurred, to wit:)

11         THE COURT:  Jose Saldivar-Gonzalez.  Is there any

12   objection to the report and recommendation of the Magistrate

13   Judge.

14         MR. STAPLETON:  No, Your Honor.

15         AUSA DOWD:  No, Your Honor.

16         THE COURT:  Then the report is approved and the

17   Defendant's plea of guilty is accepted.

18      All right.  The Defendant's plea of guilty having been

19   accepted based upon the evidence recited in the record during

20   re-arraignment, The Court finds that the Defendant, Jose

21   Antonio Saldivar-Gonzalez, is guilty of the offense of being an

22   alien unlawfully found in the United States after deportation

23   as alleged in this indictment.

24      Now, Mr. Stapleton, would you please indicate whether you

25   have reviewed the Presentence Investigation Report with your

                Captured and Transcribed by Computer - Eclipse

1    client?

2            MR. STAPLETON:  Yes, I have, Your Honor.

3            THE COURT:  And you've indicated that there are no

4    objections?

5            MR. STAPLETON:  That's correct, Judge.

6            THE COURT:  Sir, is there anything you wish to say to

7    The Court before you're sentenced?

8            THE DEFENDANT:  Well, I know that I did wrong.  I was

9    wrong in coming back here, but I did it because of my children.

10   They're here.  I wish you would help me out a little bit as far

11   as any sentence goes.  I know it was wrong of me to come and I

12   promise I won't ever come over here again on this side.

13           THE COURT:  Mr. Stapleton, there's no revocations or

14   anything pending?

15           MR. STAPLETON:  Judge, there is a parole revocation

16   pending in the 138th on a burglary charge and they have asked

17   to hold that until after the -- this sentencing before they go

18   forward.  There's also a probation -- an outstanding probation

19   in the county court-of-law for a DWI, but they've indicated

20   that that will not be pursued, it will be dismissed.  He does

21   not have counsel appointed on the parole revocation that I know

22   of, Judge.

23           THE COURT:  Okay.  Is that -- the probation revocation

24   that you're talking about, is that the one in paragraph 46,

25   that DWI?  Is it a new case or probation case?

                  Captured and Transcribed by Computer - Eclipse

1        MR. STAPLETON:  It's -- after his arrest, there was --

2    it's a probation case.  It's reflected in the criminal history

3    earlier.

4        THE COURT:  Where do your children reside?  I guess the

5    youngest one?

6        THE DEFENDANT:  Harlingen.

7        THE COURT:  But it looks like you've got other children

8    who live in Mexico?

9        THE DEFENDANT:  I have children there and in Mexico, as

10   well.

11       THE COURT:  And you have a child, Jose Antonio, where

12   does he live?

13       THE DEFENDANT:  He's here in Harlingen.

14       THE COURT:  You've got quite an extensive criminal

15   history.

16       MR. STAPLETON:  Your Honor, I spoke to his wife last

17   night and she's unable to come for child care reasons, but she

18   remains supportive of him and, you know, he does have an

19   extensive history and I have explained to him this court's

20   restriction as far as the guidelines go and we have a

21   recommendation at the bottom of the guidelines, but I also told

22   him that I would reurge the difficulty of somebody with family

23   staying away.  It happens over and over again whenever they

24   have family.  It is so hard for them not to return.

25       THE COURT:  I know it is true, but then, you know, you

                Captured and Transcribed by Computer - Eclipse

1  have to understand that you're not doing them any favors by

2  coming back and you wind up going to prison.  I mean, you can't

3  help them while you're in prison either.  So, you know,

4  regardless of the fact that you've got family here, obviously

5  family in Mexico, too -- you got family everywhere, it looks

6  like -- I'm pretty restricted in the punishment that can be

7  assessed.  But even so, you've got a very extensive criminal

8  history that includes some very serious crimes.  So, it is not

9  like you're -- just totally been a model of good behavior

10  during the time that you've been here in this country -- or

11  during the times you've been here in this country.

12      In any event, pursuant to the Sentencing Reform Act of

13  1984, you are hereby sentenced to a term of imprisonment of 77

14  months.  Upon release from imprisonment you shall be placed on

15  supervised release for a term of three years without

16  supervision.  During this period of supervised release, you

17  shall not commit another federal, state or local crime and

18  shall comply with all standard and mandatory conditions of

19  supervised release with the additional condition that you are

20  not to possess a firearm or destructive device and you are not

21  to re-enter the United States illegally.

22      The Court finds that you do not have an ability to pay a

23  fine and therefore waives the imposition of a fine.  However,

24  The Court does impose a special assessment of $100, which The

25  Court will order remitted in the event the Government moves to

Captured and Transcribed by Computer - Eclipse

1    do so based upon your indigency.

2        Sir, this sentence is in conformance with the Sentencing

3    Reform Act of 1984 and it is also in conformance with the plea

4    agreement that you entered into with the Government and, as

5    justification for this sentence, The Court adopts the findings

6    in the presentence report.

7        Sir, you understand that you've got -- I mean, it's a long

8    sentence.  I'm not going to argue about that, but you

9    understand that the maximum term under the guidelines that you

10   scored was 96 months.  You're looking at -- you know, you would

11   have been looking at another two years in prison for this.

12   Just understand that every time you come back into this country

13   illegally, the punishment is only going to go up.  It is never

14   going to go down.  So, again, I understand that it is a

15   hardship on your family possibly financially, certainly, you

16   know, for children who need a parent around, but bottom line is

17   that you're not going to be around anyway because you're going

18   to keep -- your sentences are going to keep getting longer and

19   longer each time you're convicted.  And I just hope you

20   understand that.

21       Do you understand that?

22            THE DEFENDANT:  Yes.  Yes, I do.

23            THE COURT:  All right then.  If there's nothing further

24   we'll be in recess.

25            AUSA DOWD:  The Government would move to remit the

Captured and Transcribed by Computer - Eclipse

1    special assessment.

2         THE COURT:  Motion's granted.  Mr. Stapleton, you may

3    be excused.

4         MR. STAPLETON:  Thank you, Your Honor.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Captured and Transcribed by Computer - Eclipse

1   UNITED STATES DISTRICT COURT    *

2   SOUTHERN DISTRICT OF TEXAS    *

3      I, BRECK C. RECORD, Official Court Reporter, United States

4   District Court, Southern District of Texas, do hereby certify

5   that the foregoing is a correct transcript from the record of

6   proceedings in the above-entitled matter.

7      I certify that the transcript fees and format comply with

8   those prescribed by the Court and Judicial Conference of the

9   United States.

10

11   6/13/00

12                       BRECK C. RECORD,
                             Official Court Reporter
                             United States District Court

13                      Southern District of Texas

14

15

16

17

18

19

20

21

22

23

24

25

Captured and Transcribed by Computer - Eclipse

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA,       §
    Respondent-Plaintiff        §
                              §
vs.                             §    CA B-01-189
                              §
JOSE ANTONIO SALDIVAR-GONZALEZ, §
    Petitioner-Defendant        §
    ( CR B-99-417)              §

ORDER

The Court, having considered Saldivar's motion to vacate sentence and the Government's response, concludes that dismissal of the cause is warranted.

Saldivar has failed to overcome the jurisdictional burden of demonstrating cause for failure to pursue his claim on direct appeal. Saldivar fails to demonstrate any prejudice as a result of the complained of deficiencies or his actual innocence. Saldivar fails to show his attorney's performance was deficient or that he suffered any prejudice therefrom. Even if the merits were reached, the factual premises upon which Saldivar's claim relies is incorrect.

Therefore, Saldivar's motion should be DISMISSED in its entirety.

DONE on this the _____ day of _____, 2002 at Brownsville, Texas.

_____
FELIX RECIO
UNITED STATES MAGISTRATE JUDGE